IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| INSTITUTO MEXICANO DEL SEGURO SOCIAL, | ) ) ) | |
| *Plaintiff*, | ) ) | Civil Action No. |
| v. | ) ) | |
| FRESENIUS MEDICAL CARE AG & CO. KGAA, AND FRESENIUS MEDICAL CARE HOLDINGS, INC. | ) ) ) ) ) | |
| *Defendants*. | ) | |

IMSS' ORIGINAL COMPLAINT

The Instituto Mexicano del Seguro Social ("IMSS") hereby sues Fresenius Medical Care AG & Co. KGaA and Fresenius Medical Care Holdings, Inc. (together "Fresenius") as follows:

NATURE OF THE CASE

1.      For years, Fresenius used bribery as an integral part of its world-wide marketing strategy. In the Americas, Fresenius conducted the extensive, international scheme from its regional headquarters in Waltham, Massachusetts.

2.      Fresenius' conduct is well established. In early 2019, Fresenius entered into an Agreed Cease and Desist Order with the United States Securities and Exchange Commission (the SEC) and a Deferred Prosecution Agreement with the Department of Justice (DOJ), through which Fresenius admitted to engaging in organized bribery in Mexico and a host of other countries. In total, Fresenius paid $231 million in fines and forfeitures as a result of its admitted conduct.

3.      In Mexico, Fresenius paid bribes to government officials to sell overpriced medicine and related services to IMSS, a decentralized agency of the Mexican government that conducts the

IMSS' ORIGINAL COMPLAINT—page 1

purchases of medicine and medical products that are provided to Mexican citizens by various agencies of the Mexican government, including IMSS itself.

4.      If IMSS had known of the illegal bribery, it could not have made any purchases from Fresenius. That prohibition affects every IMSS purchase from Fresenius from at least 2010 through early 2019.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 (a)(4) because this action is between a foreign state pursuant to the Foreign Sovereign Immunities Act (the FSIA) and a citizen of the United States.

6.      This Court has venue pursuant to (1) 28 U.S.C. § 1391(b)(1) because Fresenius has its principal place of business in this District and (2) 28 U.S.C. § 1391(2) because a substantial part of the events and omissions giving rise to the claims presented herein occurred in this District.

## PARTIES

7.      IMSS is the Mexican Social Security Institute, a decentralized agency of the United Mexican States. IMSS is therefore a "foreign state" pursuant to the FSIA, and its officials are covered by the Foreign Corrupt Practices Act.

8.      Fresenius is a multinational corporation principally involved in the development, manufacture, and marketing of medical devices. Fresenius's operations in the Americas are run out of Fresenius' regional headquarters in Waltham Massachusetts.

9.      Fresenius Medical Care AG & Co. KGaA can be served by service on its US agent, Fresenius Medical Care Holdings, Inc., through CT Corporation System, 155 Federal Street, Suite 700, Boston, Massachusetts 02110.

10.     Fresenius Medical Care Holdings, Inc., can be served through CT Corporation System, 155 Federal Street, Suite 700, Boston, Massachusetts 02110.

## FACTUAL BACKGROUND

### The Parties' Business Relationship

11.     IMSS is the main social-service agency of the Mexican government. It was created in 1943 by order of the Mexican President, who continues to nominate IMSS's General Director.

12.     IMSS provides health care services to tens of millions of people at hospitals that IMSS owns and operates throughout Mexico. The Mexican government funds IMSS through taxation and compulsory contributions. IMSS also manages the purchases of medical supplies for other Mexican governmental agencies, including the Instituto de Seguridad y Servicios Sociales de los Trabajadores del Estado (ISSSTE), Petroleos Mexicanos (Pemex), and the Mexican military.

13.     IMSS is the appropriate agency to bring the claim raised in this complaint.

14.     Fresenius is medical care company, principally focused on treatment of kindney disease and dialysis. The company distributes its products worldwide.

### Fresenius' International Bribery Scheme

15.     For years, Fresenius used bribes to sell its products to governmental agents throughout the world, including Mexico.

16.     Fresenius' international bribery strategy has been established in actions brought by the SEC and the DOJ.

17.     Fresenius' bribery was not limited to foreign countries. Fresenius also utilized illicit payments to sell its products in the United States. In 2000, Fresenius paid the US government $486 million to resolve its liability for paying kickbacks to doctors in the United States.

18.     In 2019, Fresenius agreed to entry of an Agreed Cease and Desist Order with the SEC in which it admitted to using illegal bribes in Mexico, along with Angola, Benin, Bosnia, Burkina Faso, Cameroon, Chad, China, Gabon, Ivory Coast, Morocco, Niger, Saudi Arabia, Senegal, Serbia, Spain, and Turkey. At the same time, Fresenius entered into a deferred prosecution agreement with the Department of Justice based on similar illegal activities. The DOJ agreement was signed by Rice Powell, who is Chairman of the Board of both Fresenius Medical Care AG & Co. KGaA and Fresenius Medical Care Holdings, Inc.

19.     Notably, Fresenius confessed that its senior management actively supported the international bribery scheme, personally engaging in corruption schemes and directing employees to destroy records of the misconduct. The improper conduct continued for years in Mexico, Angola, Benin, Bosnia, Burkina Faso, Cameroon, Chad, China, Gabon, Ivory Coast, Morocco, Niger, Saudi Arabia, Senegal, Serbia, Spain, and Turkey.

20.     Fresenius cannot deny its international use of bribery. As part of its agreement with the DOJ, Fresenius agreed that would not "make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility under U.S. law by the Company" for its pervasive use of bribery. Although the DOJ agreement does not expressly mention Fresenius' illegal conduct within Mexico, it does encompass the entire world-wide scheme of which Mexico was an admitted part. Fresenius is also bound by the final SEC Order, which expressly outlines Fresenius' illegal conduct within Mexico.

21.     As part of its agreements with the SEC and DOJ, Fresenius paid $231 million in fines and forfeitures.

*Fresenius' Conduct in Mexico*

22.     Starting in at least 2010, Fresenius engaged in an illegal scheme to increase the price paid by IMSS for dialysis treatments. To achieve its illegal ends, Fresenius utilized a third-party agent to pay kickbacks to IMSS officials.

23.     In January 2010, Fresenius Mexico was awarded a portion of an IMSS subrogation tender for the years 2010 and 2011 at an agreed reimbursement price of approximately $92 per dialysis treatment, which was a price increase of $13.17 per treatment or 16.7% over the previous contract price.

24.     The substantial increase was obtained through the use of bribes.

25.     Fresenius was so pleased with its agent's illicit conduct that, in December 2010, almost a full year after the IMSS tender award, Fresenius agreed to pay its Mexican agent an after-the-fact commission of $0.40 per treatment performed on IMSS patients in 2010 and $0.20 per treatment in 2011. The retroactive contract improperly identified the after-the-fact commissions as being for "advice."

26.     An internal Fresenius audit confirmed that a material portion of the improper commissions was intended to be paid passed on to IMSS officials.

27.     During the two-year term of the single illegal contract, Fresenius sold more than $185 million in goods and services under the contracts obtained by bribery. As a result, Fresenius garnered more than $31 million during the term of the two-year contract.

28.     Fresnius' conduct, however, affected more than the single two-year contract. To obtain new contracts for 2012 through 2019 (when Fresenius finally disclosed its illegal conduct) Fresenius was required to represent that it had and would comply with Mexican acquisition laws, which clearly proscribe bribes. From 2012 through 2018, Fresenius sold more than $580 million in

goods and services, all of which was affected by Fresenius' illegal conduct. Assuming Fresenius merely maintained its illicit 16.7% advantage, Fresenius garnered *another* $97 million in illicit gains.

*International Conduct in Support of the Scheme*

29.     Fresenius' conduct was international in scope and orchestrated out of its corporate offices in Waltham.

30.     Fresenius utilized a similar scheme in at least 18 countries, including within the United States.

31.     High level corporate officers within Fresenius' Waltham offices had direct knowledge and approved of its own illegal activities and the illegal activities of its wholly-owned subsidiaries and its agents throughout the world and specifically including Mexico.

32.     To control the international scheme, Fresenius personnel in Wlatham necessarily communicated with Fresenius personnel around the world, including within Mexico. Fresenius personnel would also travel to and from Massachussets to Mexico in support of the scheme.

*Effect on IMSS*

33.     To obtain IMSS contracts, Fresenius had to represent that it had and was complying with all legal requirements for the sale of medical equipment to IMSS and within Mexico.

34.     Fresenius made the required representations, but its statements were manifestly false.

35.     IMSS relied on Fresenius' false, material statements and omissions to consummate business transactions with Fresenius. IMSS' reliance lasted longer than the bribes themselves. With each additional contract, Fresenius had to represent that it had and would comply with Mexican law. Following the first bribes, those representations were false. Absent the false representations, IMSS would have been legally barred from contracting with Fresenius. Therefore, IMSS relied on Fresenius'

representations when approving contracts for the purchase of Fresenius products well after the expressly illicit conduct set out above.

36.     Fresenius obtained more than $31 million in illicit returns from the 2010-2011 contract alone. Fresenius' actual gains from its illegal bribery were far greater.

37.     Fresenius' fraud voids Fresenius' contracts with IMSS from 2010 through 2018, and therefore, Fresemius should be required to return all proceeds received from IMSS (more than $765 million), retaining at most the actual production cost of the supplies it sold. At a minimum, Fresenius should have to return the extra $13.17 it received for each treatment it sold during this period, totalling more than $128 million.

## CLAIM FOR RELIEF—FRAUD

PLAINTIFF REALLEGES AND REAFFIRMS PARAGRAPHS 1-37 ABOVE AND FURTHER ALLEGES:

38.     Based on the foregoing facts, IMSS asserts a claim for fraud.

39.     Fresenius' false, material statements and omissions to IMSS were fraudulent and were lnown to be false at the time they were made.

40.     IMSS justifiably relied on Fresenius' false, material statements and omissions in order to consummate business transactions with Fresenius. Absent the false claims, IMSS would have been barred from contracting with Fresenius.

41.     IMSS is entitled to avoid the contracts fraudulently obtained and to a return of the compensation it paid to Fresenius. IMSS' remedies are the same under either United States or Mexican law.

42.     As a result of the fraud and fraudulent misrepresentations, Plaintiff has been damaged in excess of $765,000,000 as can nearly be determined.

PRAYER FOR RELIEF

43.    IMSS prays that this Court award damages in the amount of $765,000,000 or damages

so provable, and for all other relief to which it is entitled under law or equity.

Dated: October 26, 2020.

Plaintiff demands a jury for all issues and counts so triable.

Respectfully submitted,


By: /s/ Mark Maney
Mark Maney
Attorney-in-Charge
Maney & González-Félix PC
Texas Bar No. 12898200
Federal ID: 11815
Pro hac vice pending
712 Main Street
Suite 2100
Houston, Texas 77002
Telephone: 713.806.2500
mmaney@maneylaw.com

s/Matthew J. Valcourt
Matthew J. Valcourt
VALCOURT AND ASSOCIATES LLC
MA BOBO NO: 630620
850 NE Third St, Suite 208
Dania FL 33004
Email: mvalcourt@valcourtlaw.com
Telephone: (305) 763-2891
Facsimile: (305) 470-7484

ATTORNEYS FOR IMSS